IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                    Plaintiff

      v.

VINCENT A. LOWE,

                    Defendant.

REPORT AND
RECOMMENDATION

09-cr-18-bbc

_____

## REPORT

A federal grand jury has charged defendant Vincent Lowe with possessing over 50 grams of crack cocaine with intent to distribute it.  Madison police found the crack while executing a state search warrant for Lowe's car.  Before the court is Lowe's motion to quash the warrant and suppress the crack cocaine. *See* dkt. 16.  For the reasons stated below, I am recommending that the court deny Lowe's motion.

Most of the evidence is derived from police reports and stipulations between the parties, although I did take brief testimony from a police detective on April 22, 2009.[1]  Based on all the evidence in the record at this time, I find the following facts:

## FACTS

In September 2008, the Dane County Narcotics and Gang Task Force was investigating Vincent Lowe for drug trafficking.  Lowe was on state probation at that time and his probation officer (PO) was Dan Robinson.  On September 4, 2008 and September 5, 2008, a confidential informant wearing a wire made controlled buys of crack cocaine from Lowe.  Task Force agents surveilled both drug sales An undercover officer actually was present during Lowe's second sale to

_____

[1] After the court accepted this testimony, Lowe asked to bring in his probation agent to testify. I denied that request.

the informant.  The informant advised the agents that he was scared for his safety and did not want to be identified or to testify against Lowe.  The agents agreed to honor these requests.

Meanwhile, oblivious to this extracurricular activity, PO Robinson visited Lowe at home on September 15, 2008.  PO Robinson was concerned that Lowe did not have a regular job, which was a condition of his probation.  Lowe explained that he had enlisted neighborhood children to sell candy for him at school; PO Robinson, concerned about tax violations, told Lowe to stop this. PO Robinson did not take any action against Lowe on these violations at that time.

The next day, September 16, 2008, Madison Police Detective Julie Rortvedt called PO Robinson to advise him that the task force had two buys into Lowe, but that the Informant was scared to be identified.  PO Robinson responded that he had just talked to Lowe's the day before and had identified some concerns about Lowe's employment situation.  PO Robinson told Detective Rortvedt that based both on the drug sale information and the employment situation, he would put a probation hold on Lowe, but that he would only set out the employment information as his reason for the hold.[2]  Detective Rortvedt similarly limited her report of how and why PO Robinson was going to put a hold on Lowe.  Thus, by design, no written reports mentioned the Informant or his controlled drug buys from Lowe.  In his September 16 activity log entry for Lowe, PO Robinson noted that Detective Rortvedt had advised him that the task force "[has] information that the ∧ is dealing crack cocaine."  That same day, PO Robinson staffed

---

[2] *See* Hearing Transcript, dkt.32, at 5-6.  Later in her testimony, Detective Rortvedt sounds like she's backtracking, *id.* at 10, but I conclude that Detective Rortvedt's testimony is internally consistent although confusingly presented.  PO Robinson kept his promise by not using the Informant's information as an on-the-record basis for seeking a hold, but he was crediting the report of drug trafficking and acting on it.  A revocation based only on the employment violation would not have led to a residence and vehicle search.

Lowe's case with his supervisors; the result was that the probation office agreed to put a probation hold on Lowe and to conduct a home and vehicle search.  PO Robinson, Detective Rortvedt and other task force officers searched Lowe's apartment and vehicle but found nothing of evidentiary value.

Meanwhile, still on September 16, 2008, Lowe was out driving with some companions in a van when, completely unrelated to the drug investigation, a police patrol officer saw Lowe run a red light.  Lowe did not immediately pull over as directed, causing the police to treat this as a high-risk stop.  Lowe eventually pulled over and was removed from the van and handcuffed, and patted down.  Officers recovered some car keys and a rubber-banded stack of $3000 cash folded into $1000 increments, from Lowe's pocket.  Then they learned of the probation hold that PO Robinson had issued for Lowe, so they took Lowe to the police department's south precinct house for booking.   Nothing of evidentiary value was recovered from the van.   Task force Agents transported Lowe to the county jail.

At some point that afternoon, Lowe's girlfriend, Altisha Rodgers, called Madison Police Officer Denise Markham, a task force agent, to retrieve car keys taken from Lowe during his arrest. Before they could meet, at about 4:20 that afternoon (still September 16, 2008), Lowe used the jail telephone to call Rodgers.[3]  The jail telephone is monitored (detainees are told this) and Officer Markham listed to this call.  Lowe told Rodgers, "Be quite, listen.  You get the keys from that police bitch?"  Rodgers said no; Lowe asked "Why you ain't get the keys?"  Lowe continued:

> It ain't about the fuckin' van, ain't you listening?  Why else would
> I tell you to get the keys, get the keys and take the Lincoln. . . .

---

[3] It is not entirely clear from the reports whether Lowe  was at the jail or still at the precinct house when he made this call, but his location is irrelevant to the analysis.

> This shit is costing a nigger his god damn life, man, motherfucker
> don't listen. . . .Fuck them keys, bust that window.  Go right now!

Dkt. 16, Exh. E.

Low asked Rodgers to put another person on the line; Lowe instructed him "bust that window and do what you gotta do, armrest, hurry up, alright, do what you gotta do."

Not surprisingly, task force agents promptly reconvened at Lowe's residence, arriving a few minutes before Rodgers.  They saw a Lincoln Continental parked in front.  Rodgers said that the car belonged to Lowe, although he recently had sold it to someone who had not yet picked it up.  Officer Markham arrived with her drug-detecting dog who "showed interest" but did not alert to the exterior of the Lincoln.  The agents had the Lincoln towed and secured until they could apply for a search warrant.  Rodgers consented to the search of two other vehicles at ths scene over which she had authority and nothing was found.

On September 17, 2009, Detective Rortvedt applied to Dane County Circuit Court for a warrant to search the Lincoln.  Her affidavit speaks for itself and can be found at dkt. 16, exh. G.  By way of synopsis, Detective Rortvedt reported in detail what her informant had *told* her about witnessing Lowe deal in crack and marijuana, but she did *not* include any information about the two controlled buys from Lowe on September 4 and 5.  Detective Rortvedt vouched for her informant's reliability in a generic fashion.  Detective Rortvedt did report Lowe's telephone conversation from the jail to Rodgers (whom she simply identified as "a female"), including the language quoted above.  Detective Rortvedt did not report that the drug detecting dog had failed to alert to the Lincoln.  She did not report that searches of Lowe's residence, van and two other cars had not discovered anything of evidentiary value.

The court granted the warrant.  In the console/armrest between the seats agents found a bag containing about 120 grams of crack, a digital scale and a marijuana grinder.

## ANALYSIS

"Suppression of evidence . . .  has always been our lasts resort, not our first impulse."

*Hudson v. Michigan,* 547 U.S. 586, 591 (2006).

## I.  Attenuation

Lowe argues that PO Robinson did not have sufficient evidence to justify the hold that ultimately led to Lowe's frantic call to Rodgers.  Lowe's thought process is that but for this baseless probation hold, he would not have been in custody to make the damning telephone call that provided the probable cause to search his Lincoln.  You can't argue with the logic of this contention, but you can argue with the legal support for it.

Thirty-four years ago, the Supreme Court rejected a "but for" rule regarding confessions following illegal arrests.  *Brown v. Illinois*, 422 U.S. 590, 603 (1975).  In other words, it is almost pointless for Lowe to argue that, but for the allegedly illegal probation hold, he never would have been put in the position of having to call home on a monitored jail telephone to cuss out his loved ones for not having more quickly emptied the bad stuff out of Lowe's Lincoln.

Even assuming, *arguendo*, that Lowe was arrested illegally, Lowe must establish that his phone call was not an act of free will.  That would be a tough sale: the suppression analysis presupposes that a defendant's incriminating statements resulted from police interrogation, then asks whether the statements were voluntary.  The question is whether this *confession* was an act of free will, and therefore severable from whatever illegal seizure might have put the defendant in

5

police custody in the first place.  *Id.; see also Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *United States v. Reed*, 349 F.3d 457, 463 (7th Cir. 2003).

Conceptually, nothing could be more voluntary than a defendant's furtive phone call to his confederates to hurry up and deep-six the bad stuff before the police find it.  Lowe is understandably angry that he was put in a position to have to make this call in the first place, but the call itself and Lowe's message home were not prompted by anything the police said or did. Even if one prefers complicated to simple, there is no evidence that the police devised an elaborate ruse to flush out Lowe's stash by causing Lowe to make unguarded statements.  Lowe's decision to phone home was so legally attenuated from his arrest that he cannot seriously contend that his allegedly improper arrest requires suppression of his imprudent but entirely voluntarily statements. At best, Lowe is left to argue that the search warrant lacked probable cause (an equally uncompelling argument discussed below).

Even if there were some traction to Lowe's challenge to his arrest, he is thwarted by the Supreme Court's recent retrenchment of the exclusionary rule, which now is reserved for cases of deliberate, reckless or grossly negligent conduct by law enforcement officers.  *See Herring v. United States*, ___ U.S. ___, 126 S.Ct. 695, 702 (2009).  Here, notwithstanding Lowe's contrary view, PO Robinson knew from Detective Rortvedt that the police had robust evidence that Lowe was selling drugs while on state supervision.[4]

Even if Lowe were correct in arguing that PO Robinson did not *rely* on his drug dealing to issue the probation hold, he cannot dispute that PO Robinson was *aware* of this alleged conduct

---

[4] The government proffered at the evidentiary hearing that it has not charged Lowe with the two drug sales because it is keeping its promise to the informant.

and that Lowe's employment situation on September 15, 2008 constituted a technical violation of Lowe's conditions of probation.  Putting a hold on Lowe was  not reckless, grossly negligent or deliberately wrong; it was prudent, cautious supervision.  PO Robinson staffed this decision with his supervisors before making his decision.  Certainly the task force agents cannot be faulted for their role in prompting Lowe's detention: they had recent, first hand knowledge that Lowe was selling crack, and they shared the details with PO Robinson, so they had no reason to question the lawfulness of Lowe's custody.[5]

## II. The Probation Hold

As noted in the previous section, it does not matter to the suppression analysis whether the probation hold was valid, but for completeness's sake, I note that it was.  Lowe was serving a state sentence of extended supervision and therefore was subject to administrative detention upon reasonable suspicion that he had engaged in new criminal conduct.  *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir.  2003), *citing United States v. Knights*, 534 U.S. 112, 122 (2001).   Reasonable suspicion is something more than a hunch but less than probable cause, existing when there is some objective manifestation that the suspect is engaged in prohibited activity.  *Knox*, 342 F.3d at 659; *see also United States v. Fiasche*, 520 F.3d 694, 697 (7th Cir. 2008*)*.

Here, PO Robinson already knew that Lowe was violating his release conditions by not working and by selling candy to children on the gray market.  It is irrelevant that PO Robinson was not particularly concerned about these admitted job and tax violations until he learned that

---

[5]   *Herring* undermines Lowe's attempt to premise suppression on his claim that his arrest was constitutionally unreasonable but it does not prevent him from arguing lack of probable cause for the warrant.

Lowe was selling crack.  If the violations were real and provided grounds for a hold, then it does not matter how ticky-tack they were and it does not matter if they were merely a pretext.  *See, e.g.,* *United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008)(*citing Whren v. United States*, 517 U.S. 806 (1996) and its progeny).

Obviously, the real motivation for PO Robinson seeking a probation hold on Lowe was the task force's report that Lowe had been selling crack.  Detective Rortvedt testified at this court's evidentiary hearing that she sought out PO Robinson to report Lowe's two recent crack sales to an informant, and that she warned PO Robinson that the task force was protecting the informant's identity because the informant was frightened for his safety.  Lo and behold: the probation hold does not mention the alleged drug sales.  From this omission, Lowe argues that his detention was constitutionally unreasonable.

Perhaps Lowe would have had a procedural due process point at a probation revocation hearing: it would be improper for the state to consider secret information not contained in the revocation report and not divulged to Lowe.  But Lowe cannot persuade this court that his seizure was constitutionally unreasonable merely because the documentation supporting his  probation hold did not mention his drug sales.  All the probation office needed to hold Lowe was reasonable suspicion.  The information known to PO Robinson and obviously relied upon by him in issuing a hold for Lowe greatly exceeded this minimal threshold.

Lowe strenuously argues otherwise, contending that, absent live testimony from PO Robinson, the court cannot credit the government's version of how the probation hold arose.  Lowe is incorrect.  Hearsay is admissible at suppression hearings, *United States v. Raddatz*, 447 U.S. 667, 679 (1980) and a fact-finder may employ common sense in making reasonable inferences from

8

circumstantial evidence, *see United States v. Stark*, 309 F.3d 1017, 1021-22 (7th Cir. 2002). Just because Lowe adamantly insists on contesting every point and conceding nothing does not entitle him to an evidentiary hearing bespoke to his whim. I cannot envision any realistic scenario in which the cross-examination of PO Robinson would have undermined the strength of the evidence already in the record. More likely, PO Robinson would have corroborated all of the information already provided through his written reports and Detective Rortvedt's testimony. In sum, this court should not quash Lowe's arrest or any evidence derived from it.

### III. Probable Cause for the Search Warrant

What's left is Lowe's probable cause challenge to the search warrant. At a telephonic conference preceding the evidentiary hearing, the government agreed that it was willing to modify Detective Rortvedt's affidavit in the fashion requested by Lowe, not because the government conceded that Lowe was correct in his *Franks* challenge, but because the government was confident that the warrant still was valid even when modified. *See, e.g., United States v. Hoffman*, 519 F.3d 672, 676 (7th Cir. 2008).

In his motion, Lowe requested these four modifications to Detective Rortvedt's search warrant affidavit: (1) A search of Lowe's residence–made in reliance on the CI's claim–had failed to produce any evidence; (2) Searches of Lowe's person, his van and two cars in his driveway had failed to produce any evidence; (3) The drug-detecting dog had was "interested" in the Lincoln but had not alerted to it; and (4) Detective Rortvedt vouched for her informant's reliability despite knowing that the searches mentioned in points (1) and (2) had not recovered any evidence. *See* dkt. 16 at 3-4. My probable cause analysis incorporates these four points.

Lowe probably still won't be satisfied because I have not adopted his self-serving, inaccurate characterizations of these factual premises. Similarly, I have ignored Lowe's distorted exegesis of his jail phone call, *see* Reply Brief, dkt. 49, at 6. Lowe's divide-and-conquer approach to the search warrant affidavit contravenes the longstanding rule that courts analyze probable based on the totality of circumstances. *United States v. Caldwell*, 423 F.3d 754, 760-61 (7th Cir. 2005). Probable cause to support a warrant exists if the affidavit sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. The inquiry is practical, not technical. *United States v. Watzman*, 486 F.3d 1004, 1007 (7th Cir. 2007). As the Court noted fifty years ago in *Brinegar v. United States*, 338 U.S. 160 (1949),

> In dealing with probable cause, . . . as the very name implies, we are dealing with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.

*Id.* at 175.

This is a low evidentiary threshold, requiring only a probability or a substantial chance of criminal activity, not an actual showing of such activity. *United States v. Roth*, 201 F.3d 888, 893 (7th Cir. 2000), *quoting Illinois v. Gates*, 462 U.S. 213, 244 (1983).

The lynchpin to the probable cause determination is Lowe's jailhouse telephone call. Lowe can spin this call until his arms get tired, but he cannot shake its immutably incriminatory nature. This call explains why none of Lowe's four alleged omissions are material: the contraband was in the Lincoln, not on Lowe, not in his house, not in his van, and not in the cars parked in the driveway. This undermines Lowe's contention that Detective Rortvedt should not have characterized her Informant as "reliable": Lowe's panicked attempt to get his stuff out of the Lincoln's armrest established that the Informant knew exactly what s/he was talking about. There

10

is not enough evidence in the record to refute Lowe's challenge to the dog's failure to alert so I will not speculate as to logical explanations.  But even taking into account that the dog "showed interest" without alerting, when the court considers the totality of the circumstances in light of logic and common sense, there still is probable cause to support the search warrant.  The information from the informant, coupled with Lowe's jailhouse telephone call, provided ample support for the warrant application.


RECOMMENDATION

Pursuant to 42 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Vincent Lowe's motion to suppress evidence.


Entered this 15th day of May, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

May 15, 2009

Elizabeth Altman
Assistant United States Attorney
660 West Washington Avenue, #303
Madison, WI 53703

William Jones
Jones Law Firm
P.O. Box 44188
Madison, WI 53744

> Re:___United States v. Vincent A. Lowe
> Case No. 09-cr-18-bbc

Dear Counsel:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before May 26, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by May 26, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:     Honorable Barbara B. Crabb, District Judge

12

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).

14